IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANDREA D. RITCHIE PLAINTIFF

v. CASE NO. 12-2162

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

The plaintiff filed her applications for SSI on December 10, 2009, alleging an onset date of March 25, 2008, due to plaintiff's bipolar disorder, anxiety and depression. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on January 19, 2011. Plaintiff was present and represented by counsel.

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 32 years of age and possessed a 7th grade education. The Plaintiff had no past relevant work ("PRW") experience (T. 16).

On March 23, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's depression and anxiety 1did not meet or equal any Appendix 1 listing. T. 11. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform work at all exertional levels but had some nonexertional limitations T. 13. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as poultry production worker and sewing machine operator. T. 16-17.

**II. Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III. Discussion**:

The Plaintiff filed for SSI in December 2009 claiming she could not work because she was bipolar, depressed and suffered anxiety. (T. 107). There is only one medical record, prior to the Plaintiff filing for SSI, that contained any reference to anxiety and depression. The Plaintiff's treating physician diagnosed her with "situational stress with underlying anxiety and depression" on December 21, 2001 after the Plaintiff was "involved in an altercation with her boyfriend who struck her near the left eye with a leather belt". (T. 198). The Plaintiff never sought treatment for anxiety or depression.

Since there was not treating physician the Plaintiff was seen for a Mental Diagnostic Evaluation by Terry Efird, Ph. D., on March 3, 2010, who diagnosed the Plaintiff with panic disorder, with agoraphobia and depressive disorder NOS. (T. 165). On March 22, 2010 a Psychiatric Review Technique was completed by Steffie Turner, Ph. D. (T. 168-181). Dr. Turner then prepared a Mental RFC Assessment on March 25, 2010 finding that the Plaintiff was only Moderately Limited in some areas. (T. 184-185). She felt that the Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled).

The Plaintiff then appears to have retained an attorney in May 2010. (T. 52). After retention of an attorney the Plaintiff was sent for another evaluation and was seen by Dr. Jimmie Taylor, M.D. on July 5, 2010. Dr. Taylor's Impression was Neurosis and Anxious/Depression (T. 223) but he noted that the "Patient's mentation during exam within normal limits". (T. 222). He also note no physical limitations.

Another Psychiatric Review Technique was performed by Deborah Hartley Ph. D. On July 19 2010 with a finding that the Plaintiff was Moderately Limited in her ADLs, Social Functioning, and Concentration, Persistence or Pace (T. 244). Dr. Hartley was of the opinion that the Plaintiff "should be able to perform simple, unskilled work in the national economy." (T. 246). A Mental RFC Assessments was performed by Dr. Hartley finding some Marked Limitations but her conclusion was that the Plaintiff "can understand, remember and carry out simple tasks under routine superV1Slon. She can relate superficially to co-workers and supervisors for work purposes. She cannot tolerate active involvement with the general public."

(T. 232).

Almost one year later, and shortly before the hearing before the ALJ, the Plaintiff, at the request of her attorney, attended a session at Western Arkansas Counseling and Guidance.

The ALJ determined that the Plaintiff had the Residual Functional Capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved, and the supervision is simple, direct, and concrete. (T. 13).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id.*

**A. Credibility:**

The Plaintiff contends that the ALJ improperly assessed her credibility. In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)).

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

1. Work Record:

The Plaintiff's recorded work history shows no SGA. In 1997, 2000, 2001, and 2009 she had -0- income and only 80.06 in 2007. (T. 92). All other years are below SGA levels. The Plaintiff testified that in 2006 she lost a job because she went to jail for failure to pay fines (T. 31) not because of any alleged disability.

An ALJ may consider a claimant's work record in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ may consider that a claimants

sporadic work record reflecting relatively low earnings and multiple years with no reported earnings that showed a lack of motivation to return to work)

2. Precipitating and Aggravating Factors:

The court also finds it persuasive that the Plaintiff never sought any treatment for her anxiety or depression. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id.*; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment); *Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment)

Plaintiff's attempts to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to her claims of financial hardship because she never sought out low cost medical treatment. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999)

Evidently the Plaintiff was referred to Good Samaritan Clinic by WACAG in November

2010 but the free clinic would not see her because she could not produce a denial letter from Medicaid. (T. 29). It is clear that if the Plaintiff had pursued low cost medical treatment it would have been available to her.

3. Medication

The Plaintiff was not on any medication for her anxiety or depression nor does it appear that she was ever prescribed any. Although Plaintiff reported she was unable to afford medical treatment, the record showed that Plaintiff had been able to afford to buy cigarettes, as she smoked a half a pack of cigarettes per day (Tr. 153). It also appears that the Plaintiff has "used larger amounts of alcohol/drugs or used them for a long time that intended." (T. 252). The Plaintiff, however, denied she had any substance abuse problem and was not receptive to treatment. (T. 253). *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, the fact that he chose to smoke rather than pay for medications was inconsistent with disabling pain).

4. Functional Restrictions:

No examining doctor has placed any greater restrictions upon the Plaintiff than what is contained in the RFC.

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The court has examined the record and believes that the ALJ properly discounted the credibility of the Plaintiff.

**B. RFC Determination:**

The Plaintiff contends that the ALJ committed error by not considering her diagnosis of "panic attack with agoraphobia" made by Dr. Efird in March 2010. (ECF No. 11, p.). Panic Attack with agoraphobia is an Anxiety Disorder (DSM IV, p. 429). The court finds no error in the ALJ listing the Anxiety Disorder as the severe impairment rather than Panic Attack with Agoraphobia as the specific disorder. Her specific diagnoses was addressed by the ALJ in the RFC determination. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (holding that the fact that ALJ did not elaborate of his conclusion that Plaintiff did not meet a listing does not require reversal, because the record supports her overall conclusion).

The Plaintiff also contends that "both psychiatric evaluations support a finding of disability" (ECF No. 11, p. 11). Dr. Turner, however, was of the opinion that, despite her panic and anxiety issues she continued to function "fairly well without tx or medications". (T. 186). Dr. Turner only felt the Plaintiff to have some Moderate Limitations (T. 184-185) in the Mental RFC Assessment completed March 25, 2010. Another Psychiatric Review Technique was performed by Dr. Hartley in July 2010 which found the Degree of Limitation to be only Moderate. (T. 244). Dr. Hartley then provided a Mental RFC which did find some Marked Limitations (T. 230-231) but determined that "Claimant can understand, remember and carry out simple tasks under routine supervision. She can relate superficially to co-workers and supervisors for work purposes. She cannot tolerate active involvement with the general public." (T. 232).

The only other medical evidence comes from a visit Plaintiff made to the WACGC on November 1, 2010, at the recommendation of her attorney (Tr. 251-256). Essentially, WACGC staff performed an intake interview, opined that Plaintiff had major depression, panic disorder with agoraphobia, and partner relations problems (Tr. 255). No treatment relationship was

established, and there is no indication that Plaintiff follow up with WACGC for treatment or counseling (Tr. 251-256).

This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. The ALJ should also consider " 'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.' " *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir.2004) (*quoting Krogmeier v. Barnhart*, 294 F.3d 1019 (8th Cir.2002)). The plaintiff has the burden of producing documents to support his or her claimed RFC. See Cox, 160 F.3d at 1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Based upon the medical evidence in the record the court finds that the ALJ properly assessed the Plaintiff's RFC.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this July 2, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE